UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOANNE SMITH,
DONALD SMITH, and
EDWARD LILLY,                                                    **REPORT**
                          Plaintiffs,                            **and**
            v.                                            **RECOMMENDATION**

BEN CAMPBELL, New York State Trooper, and              **11-CV-00540A(F)**
NEW YORK STATE POLICE,

                          Defendants.

_____

APPEARANCES:           RICHARD H. WYSSLING, ESQ.
                       Attorney for Plaintiffs
                       375 Linwood Avenue
                       Buffalo, New York 14209

                       JAECKLE FLEISCHMANN & MUGEL, LLP
                       Attorneys for Defendant Campbell
                       MITCHELL J. BANAS, JR., of Counsel
                       Avant Building, Suite 900
                       200 Delaware Avenue
                       Buffalo, New York 14202-2107


## <u>JURISDICTION</u>

        This matter was referred to the undersigned by Honorable Richard J. Arcara, on

November 6, 2012, for pretrial matters, including report and recommendation on

dispositive motions.  The matter is presently before the court on Defendant Campbell's

motion to dismiss the amended complaint (Doc. No. 38), filed December 10, 2012.

## BACKGROUND

Plaintiffs Joanne Smith ("Smith"), her husband Donald Smith ("Mr. Smith"), and their son-in-law Edward Lilly ("Lilly"), commenced this civil rights action on June 24, 2011, against New York State Police ("State Police") and State Police Trooper Ben Campbell ("Trooper Campbell"). On October 17, 2011, the State Police and Trooper Campbell filed a motion to dismiss the action for failure to state a claim (Doc. No. 21) ("First Motion to Dismiss"). By Decision and Order filed October 3, 2012 (Doc. No. 30) ("October 3, 2012 D&O"), Judge Arcara granted the First Motion to Dismiss and dismissed the complaint, directing the filing by November 6, 2012 of either an amended complaint or a notice of discontinuance. On November 5, 2012, Smith and Lilly (together, "Plaintiffs"), filed an amended complaint (Doc. No. 31) ("Amended Complaint"), against only Trooper Campbell ("Defendant"), alleging Campbell, in his capacity as a State Trooper, harassed, intimidated, and abused his authority, in violation of Plaintiff's constitutional rights under the First and Fourth Amendments, and also asserting a pendent state claim for intentional infliction of emotional distress. Attached to the Amended Complaint are exhibits A through C ("Plaintiff's Exh(s). __").

On December 10, 2012, Defendant filed the instant motion to dismiss the Amended Complaint pursuant to Fed.R.Civ.P. Rule 12(b)(6) for failure to state a claim and Rule 12(h)(3) for lack of subject matter jurisdiction (Doc. No. 37) ("Defendant's motion"). Defendant's motion is supported by Defendant New York State Trooper Ben Campbell's Memorandum of Law in Support of His Motion to Dismiss Plaintiffs' First Amended Complaint Pursuant to Fed.R.Civ.P. 12(b)(6) and 12(h)(3) (Doc. No. 38), and the Declaration of Mitchell J. Banas, Jr., Esq. (Doc. No. 39) ("Banas Declaration"), with

attached exhibits A through D ("Defendant's Exh(s). __"). On January 28, 2013, Plaintiffs filed Plaintiffs' Memorandum of Law in Opposition to the Motion to Dismiss Plaintiffs' Complaint Pursuant to Fed.R.Civ.P. 12(b)(6) (Doc. No. 42) ("Plaintiffs' Response"). On February 15, 2013, Defendant filed Defendant New York State Trooper Ben Campbell's Reply Memorandum of Law in Support of His Motion to Dismiss Plaintiffs' First Amended Complaint Pursuant to Fed.R.Civ.P. 12(b)(6) and 12(h)(3). Oral argument was deemed unnecessary.

Based on the following, Defendant's motion to dismiss (Doc. No. 37), should be GRANTED in part as to the claims for violation of the First Amendment right to peaceable assembly and intentional infliction of emotional distress, and DENIED in part as to the claimed retaliatory prosecution in violation of the First Amendment and unlawful seizure in violation of the Fourth Amendment

## **FACTS**[1]

Plaintiffs' civil rights claims against Defendant pertain to Defendant's alleged abuse of his authority in his position as a New York State Trooper to harass and intimidate Plaintiffs for exercising the First Amendment rights in connection with a series of three events, including (1) traffic tickets issued to Smith on November 22, 2007, and the ensuing prosecution of such tickets ("First Incident"); (2) conducting an investigation on July 12, 2008, of Smith and Lilly in response to a comment made by Smith's son at a café earlier that same day ("Second Incident"); and (3) investigating the July 16, 2009

---

[1] Taken from the pleadings and motion papers filed in this action.

dumping on Trooper Campbell's lawn of copies of a local newspaper ("Third Incident").

**First Incident**

On November 22, 2007, Thanksgiving Day, en route to picking up her son, Thomas Smith ("Tom Smith"), who was working at a nearby residence, Smith drove her vehicle, a tan Toyota Camry, north on 7th Street in the Village of Lewiston, New York ("Lewiston"), and stopped at a stop sign at the intersection of 7th and Center Streets intending to turn right into the east-bound lane of Center Street. Smith looked both ways and observed an approaching east-bound pick-up truck, later identified as Defendant's personal vehicle ("Defendant's truck"), "approximately 200-250 feet away" from the intersection Amended Complaint ¶ 14. After turning right onto Center Street and proceeding east-bound, Smith observed Defendant's truck following half a car length behind her, traveling 25 to 30 mph. Although Center Street widens into two east-bound lanes one block east of its intersection with 7th Street, Defendant did not pass Smith but continued to follow at a distance Smith believed was dangerously close. Defendant proceeded to closely follow Smith along Center Street for an additional block to the intersection of Center Street and Portage Road. Although the traffic signal at the intersection was yellow, Smith proceeded through the intersection, while Defendant stopped at the traffic signal. Smith maintains she drove through the intersection after the traffic signal turned yellow to get away from Defendant's truck which she believed was driving too close behind her. Smith continued driving eastbound on Center Street, which becomes Ridge Road, toward a private residence located at 832 Ridge Road in Lewiston to pick up her son. Smith was still eastbound on Ridge Road when she

observed Defendant's truck was now behind her on Ridge Road.

When Smith turned into the driveway at 832 Ridge Road, Defendant's truck turned into the same driveway, driving approximately 120 feet up the driveway where it stopped two car lengths behind Smith's vehicle. Smith remained in her vehicle while Defendant, who was not wearing his State Trooper uniform, exited his truck and approached Smith, informing Smith Defendant was a New York State Trooper, and inquired whether Smith had been drinking. A woman who had been a passenger in Defendant's truck, later identified as Lauren Passanese ("Passanese"), exited the truck, identified herself to Smith as a Lewiston Police Officer, and inquired whether Smith was on medication. Defendant asked why Smith was there, and Smith, who remained seated in her vehicle, responded she was picking up her son Tom Smith. Defendant inquired why Smith pulled in front of him from Seventh Street onto Center Street, to which Smith responded she did not pull out in front of Defendant. Defendant then asked whether Smith was aware she had driven through a red light, and Smith responded she deliberately drove through the yellow light to get away from Defendant's truck which she felt was being driven in an intimidating manner.

Defendant then shouted to Tom Smith, who was in the attic of an out-building, a garage, on the property, "State Trooper; get your ass down here!" Amended Complaint ¶ 34. In response to Defendant's command, Tom Smith walked toward the driveway where Defendant was standing next to Smith's vehicle in which Smith remained seated. Smith informed her son that Defendant "had tailgated her all the way out of Lewiston." Amended Complaint ¶ 37. Tom Smith, observing his mother was visibly shaken, asked Defendant if he regularly used his personal vehicle to make traffic stops on

5

Thanksgiving, and Defendant responded, "That's it, your mother's getting two tickets now. You had to get involved, didn't you." *Id.* ¶¶ 38-39. Smith then reminded Defendant that Tom Smith had only responded to Defendant's command to come down from the garage attic to Smith's vehicle. When Tom Smith threatened to dial 911 on his cell phone to request assistance at the scene from a New York State Trooper supervisor, Defendant and Passanese returned to Defendant's truck and drove away.

Although Defendant did not give Smith a ticket on November 22, 2007, on the following Monday, November 26, 2007, Smith and her husband Donald Smith ("Mr. Smith"), visited the New York State Troopers Barracks in Lewiston, where they briefly met with Sergeant Heiser with whom they lodged a complaint about Defendant's conduct on November 22, 2007. Four hours later, Defendant, during stormy weather, personally delivered to Smith at her residence at 630 Cayuga Street, Lewiston, three traffic tickets ("the tickets") issued to Smith based on Defendant's encounter with Smith on November 22, 2007, charging violations of New York Vehicle & Traffic Law ("VTL"), including (1) Failure to Yield the Right of Way at a Stop Sign (VTL 1142(a)); (2) Passing a Red Light (VTL 1111(d)(1)); and (3) and Equipment Violation of Obstruction of View (VTL 375(30)), based on failing to remove ice from her vehicle's windows. Because the copies of the tickets Defendant delivered to Smith were illegible, having become wet from the rain when Defendant delivered them to Smith in stormy weather, on December 11, 2007, Smith sent by certified mail a letter to New York State, Division of Police and the Justice Court ("the Justice Court"), requesting legible copies of the tickets and other information. The Justice Court responded on December 13, 2007, providing Smith with legible copies of the tickets, but no supporting depositions. The copies of the tickets,

6

however, were not copies of the tickets Defendant served on Smith on November 26, 2007 but, instead, were copies of the Justice Court's computer-generated forms intended to facilitate the Justice Court's arraignment and reporting of a disposition. As such, the copies did not advise Smith of her pleading options and her right to demand a supporting deposition on the charges, but only informed Smith that she could plead not guilty by mail.

Accordingly, on December 21, 2007, Smith sent a letter to the Justice Court entering a plea of not guilty to all three tickets, and requesting an adjournment of Smith's appearance while she prepared her defense, but which made no request for a supporting deposition. By letter dated January 4, 2008, the Justice Court granted Smith's requested adjournment and re-scheduled Smith's appearance to February 7,2008. By letter to the State Police dated January 14, 2008, Smith requested supporting depositions. Included in a letter dated January 23, 2008 ("January 23, 2008 letter"), from State Police Trooper James Shepperly ("Trooper Shepperly"), were legible copies of the three original tickets and one supporting deposition for the charged failure to yield the right of way at a stop sign in violation of VTL 1142(a), in which Defendant averred Smith stated to Defendant she went through the red light at the intersection of Center Street and Portage Road "to slow you down." *Id.* ¶ 66. Trooper Shepperly also wrote that "[a]dditionally, on November 26, 2007, when Trooper Campbell met with you and your daughter, he explained the situation to you." Amended Complaint ¶ 64. It was not until she received the January 23, 2008 letter that Smith was correctly advised of her right to demand a supporting deposition with regard to each of the three tickets.

In a further letter to the State Police dated February 10, 2008, Smith

acknowledged receipt of the January 23, 2008 letter, but complained that supporting depositions were missing for the second and third traffic tickets. By letter to the Justice Court dated February 16, 2008, in response to the Justice Court's January 4, 2008 letter, Smith attached copies of her prior requests to the State Police for supporting depositions.

On February 26, 2008, during a visit with State Police Sergeant Rougeux ("Sgt. Rougeux") at her home, Smith expressed concern about Defendant. In response, Sgt. Rougeux recommended Smith plead guilty to all three tickets and the tickets would be reduced to a parking ticket. Smith maintains she felt intimidated by Sgt. Rougeux's proposal. By letter dated February 28, 2008, the Justice Court granted Smith's request for an adjournment, but failed to address Smith's request for supporting depositions.

On July 9, 2008, Smith, represented by David G. Jay, Esq., appeared for trial on the charged traffic violations in Lewiston Town Court before Justice Thomas J. Sheeran ("Justice Sheeran"), with Defendant acting as the prosecutor. Smith pleaded not guilty to the tickets. During the trial, Defendant testified on behalf of the prosecution that his decision to ticket Smith was "'because of the commotion, the fit that he [Tom Smith] was having, because of the indignation, because Ms. Smith said that she thought she did nothing wrong even though she admitted to it, she didn't think that those actions were wrong, that I would be giving her tickets.'" Amended Complaint ¶ 57 (quoting Trial Transcript[2] at 13). Following the trial, Plaintiff was found guilty on all three charges. In June 2009, two of the tickets, including for Passing a Red Light and Obstruction of

---

[2] References to "Trial Transcript" are to the page of the transcript of Smith's July 9, 2008 trial in Lewiston Town Court, filed as Defendant's Exh. D.

View, were reversed on appeal by the Niagara County Court because the requested supporting depositions were never provided.

Smith alleges Defendant issued the tickets to Smith retaliate against Smith for her son Tom Smith's actions, and subsequently lied under oath at trial, thereby allowing the retaliatory prosecution of Smith.

**Second Incident**

On the morning of July 12, 2008, at the Orange Cat Coffee Company, a café located in Lewiston ("the café"), Tom Smith commented to another café patron that Defendant was harassing him and his mother. Another café patron overheard Tom Smith's remarks and placed a call to the Lewiston Police. Tom Smith left the café before Defendant arrived in his patrol vehicle with the emergency lights flashing, followed by Lewiston Police Officer Pinzotti ("Officer Pinzotti"), who responded to the call. Defendant interviewed and allegedly intimidated the café patrons. Later that morning, at 10:15 A.M., two police vehicles stopped outside Smith's house, where Smith was then playing with her young grandson. When Defendant and Officer Pinzotti approached the door to the home, Smith recognized one of the vehicle's occupants was Defendant, called to her husband, and then retreated to the rear of the home with her grandson, leaving Mr. Smith to answer the door. Officer Pinzotti advised they were looking for Tom Smith, and Mr. Smith responded Tom Smith was not there.

At that point, Smith's son-in-law Plaintiff Ed Lilly ("Lilly"), arrived at the home intending to visit with his in-laws. When Defendant saw Lilly, Defendant shouted "Ed Lilly . . . . [y]ou don't belong here and . . . this is none of your business, leave now."

Amended Complaint ¶ 77.  Lilly responded by accusing Defendant of harassing his in-laws, and advising that because Defendant was on Lilly's family's private property, it was Lilly's business and he had no intention of leaving.  According to Lilly, Defendant stood within six inches in front of Lilly, while Officer Pinzotti stood close behind Lilly, while Defendant continued to demand Lilly leave the premises.  Lilly, however, believed he was unable to comply because, given the close proximity of the two law enforcement officials, it was in impossible for Lilly to extricate himself without making contact with one of the officers, thereby subjecting himself to arrest on assault and battery or obstruction of governmental regulations charges.  Lilly maintains he was thus seized without probable cause in violation of the Fourth Amendment.  Lilly expressed regret that Officer Pinzotti had become embroiled in the situation because Defendant had targeted Lilly's in-laws in the past, and that Lilly had "no beef" with Officer Pinzotti.  Amended Complaint ¶ 82.  Officer Pinzotti then walked away from Lilly toward his patrol vehicle, and Defendant, who remained standing six inches away from Lilly, stated he was also leaving, and he did.

After Defendant and Officer Pinzotti left the Smiths' residence, they moved their patrol vehicles across Cayuga Street about 100 feet from the Smiths' property, and Defendant then moved his patrol vehicle to block the Smiths' driveway.  Lilly used his cell phone to call "911" and reported he and his in-laws were being harassed by a State Trooper, but the dispatcher advised Lilly to call the State Police.  Defendant continued to verbally harass Lilly both before and after Lilly's emergency call.  It was only when Mr. Smith began taking pictures of Defendant's patrol vehicle outside the Smiths' residence that Defendant left.  Soon after, however, Defendant returned and parked

outside the Smiths' house for no apparent reason, and Tom Smith received a telephone call from the Lewiston Police requesting Tom Smith not patronize the Orange Cat Coffee Company.  Later on July 12, 2008, Lilly went to the State Police Barracks in Lewiston to file a complaint against Defendant.  While at the barracks, Sgt. Rougeux berated Lilly for filing the complaint, used obscene language, and made false accusations against Lilly, asserting Lilly was a "Trooper hater."  Amended Complaint ¶ 92-93.

On July 15, 2009, Lilly was present in Lewiston Town Court when Smith received a "Certificate of Disposition" from Justice Sheeran relative to her conviction on the three traffic tickets a year earlier, with two of the three convictions being reversed and the associated tickets dismissed.  While seated in the back of the courtroom, Defendant pointed at Lilly and yelled, "He is the one who lies and slanders."  Amended Complaint ¶¶ 99-100.

**Third Incident**

Early in the morning of July 16, 2009, Defendant discovered several copies of a local newspaper dumped on his front lawn.  At 2:00 A.M., two State Troopers went to Smith's house, knocked on her door, awakening Smith and inquiring as to Tom Smith's whereabouts.  One State Police vehicle was parked in front of Smith's house, and a second State Police vehicle was parked in her driveway.  Tom Smith was questioned by the two State Troopers outside of Smith's presence, yet Smith overheard references to Defendant and the newspapers.  The State Troopers then left the premises and proceeded to Lilly's residence where, at 2:15 A.M., Lilly was awakened by State

Troopers Raimondi and Kawaleski, who were accompanied by a Lewiston Police Officer.  The State Troopers questioned whether Lilly was involved in dumping the newspapers on Defendant's front lawn.  While Lilly was being questioned by Troopers Raimondi and Kawalewski, other, unidentified, State Troopers shined flashlights in the vehicles parked in Lilly's driveway.  Defendant, who was seated in the passenger seat of the second State Trooper vehicle, exited the vehicle, waving his arms in an agitated manner and yelling that Lilly was "a documented liar."  Amended Complaint ¶ 106. Defendant approached to within 10 feet of Lilly when two State Troopers blocked Defendant's progress toward Lilly who felt intimidated by Defendant's actions and feared he would be harmed by Defendant.  Lilly called "911" to report Defendant's presence on Lilly's property, that Defendant was out of control, and requested Defendant be arrested for harassment.  The "911" operated advised the matter was a State Trooper issue and directed Lilly to call the State Police.  The two State Troopers then escorted Defendant to one of the State Police vehicles, advising Lilly that they would obtain a warrant for Lilly's arrest in the morning.  After the State Troopers left, Lilly spoke to Lewiston Police Officer Ullery, the only law enforcement officer still at Lilly's residence, who explained to Lilly about the newspapers that had been dumped on Defendant's front lawn.  Lilly then invited Officer Ullery to search his vehicle which Ullery did, but found nothing and departed.

When Lilly re-entered his house, he received a telephone call from Smith who informed Lilly of the Smith's encounter with the State Troopers earlier.  Lilly then drove to Smith's house, arriving at 3:30 A.M.  For the next hour, Lilly and Smith observed a State Trooper vehicle driven by Defendant driving past Smith's house, aiming its

spotlight at the house, and parking across the street with its high beams trained on Smith's house.  Despite repeated calls to "911" and the State Police, and a direct order by the State Police to vacate the area of the Smiths' residence, Defendant continued to drive the vehicle past the Smiths' house until 4:36 A.M.  At 10:04 A.M., however, Defendants returned in his patrol vehicle to the vicinity of Smiths' house where Defendant resumed operating the vehicle in an intimidating manner.

<u>**DISCUSSION**</u>

**1.    Motion to Dismiss**

Defendant moves to dismiss the civil rights claims asserted in the Amended Complaint for failing to state a claim for which relief can be granted, failing to cure the deficiencies identified in the October 3, 2012 D&O dismissing the original complaint for failure to state a claim and granting Plaintiffs leave to replead, and as time-barred. Defendant's Memorandum at 2. Defendant further maintains that Plaintiffs' state common law claim for intentional infliction of emotional distress should be dismissed as time-barred and for lack of subject matter jurisdiction assuming, *arguendo*, the federal civil rights claims are dismissed. *Id.* at 20-22.  Plaintiffs argue in opposition that newly alleged facts in the Amended Complaint sufficiently state a claim for retaliatory prosecution of Smith in violation of the First Amendment, Plaintiffs' Response at 2, a violation of Lilly's First Amendment right to peaceable assembly, *id.* at 3, and unlawful seizure in violation of Lilly's Fourth Amendment rights. *Id.* at 3.  Plaintiffs do not, however, respond in opposition to Defendant's argument in support of dismissal of the pendent state claim for intentional infliction of emotional distress as time-barred and for

lack of subject matter jurisdiction. In further support of his motion, Defendant argues Plaintiffs have failed to offer any legal argument in opposition to Defendant's motion, instead merely misconstruing the facts Plaintiffs have alleged, such that Defendant's motion to dismiss for failure to state a claim and for lack of subject matter jurisdiction should be granted. Defendant's Reply at 1.

On a motion to dismiss under Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)"), the court looks to the four corners of the complaint and is required to accept the plaintiff's allegations as true and to construe those allegations in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (court is required to liberally construe the complaint, accept as true all factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor). The Supreme Court requires application of "a 'plausibility standard,' which is guided by '[t]wo working principles.'" *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris*, 572 F.3d at 72 (quoting *Iqbal*, 556 U.S. at 678). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss,' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "To survive a motion to

14

dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The factual allegations of the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 570. Further, the court is obligated to liberally construe a complaint alleging a § 1983 claim, even though not filed *pro se*. *Leonard Partnership v. Town of Chenango*, 779 F.Supp. 223, 234 (N.D.N.Y. 1991) (construing allegation by plaintiff, represented by counsel, that defendant town denied building permit as due process violation even though § 1983 was not mentioned in the complaint where such construction did not prejudice town given that defendant itself had construed complaint as based on § 1983 and accordingly addressed claim).

In support of his motion seeking dismissal of the Amended Complaint for failure to state a claim, Defendant submits four exhibits. Significantly, if the court on a motion to dismiss under Rule 12(b)(6), considers matters presented outside the pleadings, the motion must be treated as one for summary judgment under Rule 56, with all parties given notice of the conversion and a reasonable opportunity to present all the material s pertinent to the motion. Fed.R.Civ.P. 12(d). Here, the court finds that of the four exhibits Defendant submitted in support of the motion to dismiss, three are copies of pleadings previously filed in this action including the Amended Complaint, the original complaint, and a copy showing how the original complaint was amended and refiled as the Amended Complaint, Defendant's Exhs. A through C, while the fourth exhibit is a copy of the transcript of the July 15, 2009 court proceeding held in Lewiston Town Court during which two of the three traffic tickets Defendant issued to Smith were

dismissed, Defendant's Exh. D ("court transcript").  Although only the Amended

Complaint is before the court on Defendant's motion, a plain reading of the supporting

motion papers establishes Defendant filed the copies of the pleadings as exhibits only

to draw the court's attention to the alleged short-comings of the Amended Complaint

filed after Defendant's earlier motion to dismiss the original complaint was granted by

the October 3, 2012 D&O.  As "[i]i is well established that an amended complaint

ordinarily supersedes the original and renders it of no legal effect," *International*

*Controls Corp. v. Vesco*, 556 F.2d 665 (2d Cir.), *cert. denied*, 434 U.S. 1014 (1977), the

court need not, and does not, consider the original complaint (Defendant's Exh. C), or

the draft amended complaint demonstrating the changes between the original complaint

and the Amended Complaint (Defendant's Exh. D), such that the presentation to the

court of these documents do not require converting Defendant's motion to dismiss to

one for summary judgment.  *See Cleveland v. Caplaw Enterprises*, 448 F.3d 518, 522

(2d Cir. 2006) (holding district court was not required to convert motion to summary

judgment where court did not consider deposition excerpts but, rather, relied only upon

pleadings and contract incorporated by reference into the pleadings). That Plaintiffs

have directly quoted in the Amended Complaint portions of the Justice Court transcript

on which Defendant relies in support of his motion, such transcript has been

incorporated by reference into the Amended Complaint and may be considered without

converting Defendant's motion to summary judgment.  *See Nechis v. Oxford Health*

*Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005) (documents incorporated by reference may

be considered on a motion to dismiss without converting to summary judgment).

Furthermore, judicial notice may be taken of other judicial decisions entered in this

action.  *See New York ex rel. Spitzer v. Operation Rescue Nat'l*, 273 F.3d 184, 199 (2d Cir. 2001) (taking judicial notice of district court's decision in related proceeding).   As such, the court need not convert  Defendant's motion for failure to state a claim, to motions for summary judgment and the court therefore considers whether the Complaint should be dismissed pursuant to Rule 12(b)(6) for failing to state a claim for which relief can be granted.

## 2.    Civil Rights Claims

Section 1983, "allows an action against a 'person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Patterson v. County of Oneida*, N.Y., 375 F.3d 206, 225 (2d Cir. 2004) (quoting 42 U.S.C. § 1983).  Section 1983, however, "'is not itself a source of substantive rights.'" *Patterson*, 375 F.3d at 225 (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).  Rather, § 1983 "merely provides 'a method for vindicating federal rights elsewhere conferred'. . . ." *Id*. The elements of a § 1983 claim include (1) the deprivation of a federal constitutional or statutory right, and (2) by a person acting under color of state law.  *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (citing *Gomez v. Taylor*, 466 U.S. 635, 640 (1980)).  Here, Plaintiffs' first two claims for relief allege deprivation the constitutional rights under 42 U.S.C. § 1983, including the First Amendment ("First Claim"), and the Fourth Amendment ("Second Claim").

In the instant action, it is undisputed that Defendant, as a State Trooper, acted

under color of state law in connection with all three incidents.  As such, the only remaining inquiry is whether Defendant's conduct   Thus, for the purposes of alleging civil rights claims, the remaining relevant inquiry is whether Defendant's conduct, as alleged by Plaintiffs, deprived Plaintiffs of any federal constitutional right actionable pursuant to § 1983.  As discussed, *infra*, the court finds the Amended Complaint states a claim for violation of the First Amendment based on retaliatory prosecution, but not on interference with the right to peaceable assembly, sufficiently states a Fourth Amendment unlawful seizure claim, but does not state a claim for intentional infliction of emotional distress.

### A.     First Amendment Claims

Broadly construed, the Amended Complaint alleges two First Amendment claims, including a claim for retaliatory prosecution based on Defendant's issuance of the traffic tickets to Smith subsequent to her complaint to Sgt. Heiser about Defendant's conduct on November 22, 2007, and a claim for interference with Lilly's right to peaceable assembly based on Defendant's direction to Lilly to leave the premises on July 12, 2008.  In dismissing these same claims with leave to replead, Judge Arcara found that Smith's allegations that Defendant issued and personally delivered the three traffic tickets to her four hours after Smith had complained to Seg. Hieser about her encounter with Defendant on November 22, 2007 stated a plausible claim for retaliatory prosecution, but that Smith had failed to allege when the claimed violation accrued for purposes of the applicable three-year limitations period.  October 3, 2012 D&O at 11-12.  Also dismiss with leave to replead was Lilly's First Amendment right to peaceable

assembly claim based on Defendant's alleged direction that Lilly leave the private property belonging to his in-laws. *Id.* at 13-14. As such, the court addresses whether the Amended Complaint states a First Amendment violation based on a timely-asserted retaliatory prosecution claim, or on a peaceable assembly claim.

As to Smith's claim that Defendant issued to and prosecuted her on the traffic tickets to retaliate against Smith for complaining to Sgt. Heiser about Defendant's conduct on November 22, 2007, as discussed, Discussion, *supra*, at 18, Judge Arcara has already determined such allegations sufficiently state a claim for retaliatory prosecution in violation of the First Amendment, such that the only issue before the court is whether the claim was timely commenced within the applicable three-year limitations period. October 3, 2012 D&O at 11-12. In support of Defendant's motion to dismiss, Defendant maintains such claim accrued when Smith had reason to know of the harm, *i.e.*, when the tickets were issued in November 2007, more than three years before this action was commenced. Defendant's Memorandum at 12 (citing *Shomo v. City of New York*, 579 F.3d 176, 181 (2d cir. 2009). In opposition, Plaintiffs maintain that Smith's retaliatory prosecution claim did not accrue until June 2009 when two of Smith's tickets were reversed on appeal. Plaintiffs' Response at 3-4. In further support of his motion, Defendant argues that two of the traffic tickets Defendant issued to Smith were reversed based on a procedural irregularity, *i.e.*, Defendant's failure to provide the requested supporting deposition, rather than on the merits, such reversal does not establish a lack of probable cause for the tickets, an essential element of a retaliatory prosecution claim. Defendant's Reply at 3-4.

To state a First Amendment claim for retaliatory prosecution, Smith must plead

(1) her conduct was protected by the First Amendment, and (2) such conducted prompted or substantially caused Defendant's action.  *Dougherty v. Town of North Hempstead Board of Zoning Appeals*, 282 F.3d 83, 91 (2d Cir. 2002).  As discussed, Judge Arcara found the fact that Defendant issued and delivered the tickets to Smith only hours after Smith complained to Sgt. Heiser about Defendant's conduct on November 22, 2007, could support a First Amendment retaliatory prosecution claim, but it was unclear from the allegations of the original complaint whether such claim was timely-asserted within the applicable three-year limitations period.

Defendant is correct that an essential element in an action for retaliatory prosecution is that the prosecution was commenced without probable cause.  *See Fabrikant v. French*, 691 F.3d 193, 215 (2d Cir. 2012) ("[t]he existence of probable cause will defeat a claim of malicious prosecution. . . ."); *see also Mozzochi v. Borden*, 959 F.2d 1174, 1180 (2d Cir. 1992) ("An individual does not have a right under the First Amendment to be free from a criminal prosecution supported by probable cause that is in reality an unsuccessful attempt to deter or silence criticism of the government."). Further, under *Heck v. Humphrey*, 512 U.S. 477 (1994), one element that must be alleged and proved on a malicious or retaliatory prosecution claim is termination of the underlying proceedings in favor of the civil rights plaintiff.  *Heck*, 512 U.S. at 484. That Smith's convictions on two of the traffic tickets were reversed based on a procedural irregularity - failure to provide the requested supporting deposition - rather than on the merits, however, does not necessarily establish the reversed tickets were issued based on probable cause but, rather, remains an open question.  Moreover, because under *Heck*, Smith could not bring her retaliatory prosecution claim until the

two tickets were reversed in June 2009, the commencement of this action on June 24, 2011, was within the applicable three year statute of limitations and, thus, timely. Accordingly, Defendant's motion to dismiss should be DENIED as to the First Amendment retaliatory prosecution claim.

With regard to the allegation that Defendant ordered Lilly to leave Lilly's in-laws' property on July 12, 2008, Amended Complaint ¶ 79, Judge Arcara, based on Plaintiff's assertion made in opposition to the First Motion to Dismiss, Plaintiffs' Memorandum in Opposition to First Motion to Dismiss (Doc. No. 28) at 8 ("This activity on the part of Defendant Campbell also breeched (*sic*), Plaintiff, Lilly's right of peacable assembly with his in-laws, Plaintiffs Donald Smith and Joanne Smith."), construed such allegation as claiming an interference with Lilly's right to peaceable assembly in violation of the First Amendment, but dismissed the claim with leave to replead facts establishing "the right to peaceable assembly extends to an individual's freedom to be present on another's property, in the absence of any assembly or protest, while a police officer questions the owners of that property."  October 3, 2012 D&O at 13-14.  The Amended Complaint, however, does not include any new allegations establishing Defendant interfered with Lilly's First Amendment right to peaceable assembly but, rather, merely reasserts the same allegation as in the original complaint, *i.e.*, that Defendant and Officer Pinzotti walked toward Plaintiff and Defendant "moved to within six '6' inches in front of [Lilly] and Police Officer Pinzotti stood close behind [Lilly]," and Defendant "continued to yell at [Lilly], to leave the premises."  Complaint ¶ 72; Amended Complaint ¶ 79.  The only new allegation is some additional language that "the proximity of the two (2) officials instilled fear in [Lilly] that if he moved to disengage with the officers, he

would be arrested for assault and battery or obstruction of government regulations."
Amended Complaint ¶ 79. Such allegation, however, is irrelevant to a claimed
interference with the First Amendment right to peaceable assembly, and Plaintiffs point
to no caselaw suggesting otherwise.

Moreover, except for the heading "First Amendment Right to Peaceable
Assembly" on page 6 of Plaintiffs' Response in opposition to Defendant's motion,
Plaintiffs' Response is completely devoid of any law supporting construing the
Amended Complaint as alleging such violation; rather, Plaintiffs' argument following the
heading discusses only the alleged violation of Lilly's Fourth Amendment right to be free
from unlawful seizure. Plaintiffs' failure to argue in opposition to Defendant's motion on
this claim establishes the claim has been abandoned. *See Lipton v. County of Orange*,
315 F.Supp.2d 434, 446 (S.D.N.Y. 2004) (declaring claim abandoned where plaintiff
failed to respond to defendant's arguments for dismissing the claim); *Frink America,
Inc. v. Champion Road Machinery Ltd.*, 48 F.Supp.2d 198, 209 (N.D.N.Y. 1999)
("Plaintiff does not address these claims in his opposition papers, leading the Court to
conclude that it has abandoned them."). Accordingly, Defendant's motion should be
GRANTED insofar as the Amended Complaint asserts any claim for interference with
the First Amendment right to peaceable assembly.

Defendant's motion to dismiss the Amended Complaint should be DENIED as to
the First Amendment retaliation claim, and GRANTED as to the interference with the
First Amendment right to peaceable assembly claim.

### B. Fourth Amendment

In the October 3, 2012 D&O, leave to replead a Fourth Amendment unlawful seizure claim was granted only to Lilly. October 3, 2012 D&O at 14. In repleading his Fourth Amendment unlawful seizure claim, Lilly alleges Defendant violated his Fourth Amendment rights on July 12, 2008, when Lilly, upon arriving at his in-laws' home, was approached by Defendant, who stood in front of Plaintiff, and Officer Pinzotti, who stood behind Plaintiff, both in close proximity such that despite Defendant's order that Lilly leave the premises, Lilly felt intimidated because he was unable to move without coming into physical contact with either Defendant or Officer Pinzotti, and risking being charged with assault and battery or obstruction of governmental regulations, and thus was never free to terminate the encounter, but was seized. Amended Complaint ¶¶ 76-85.[3] Defendant argues in support of his motion to dismiss that Lilly's assertion of a claim directly under the Fourth Amendment is impermissible, warranting dismissal under Fed.R.Civ.P. 12(h)(3), Defendant's Memorandum at 5-6, and, alternatively, the events of July 12, 2008, as pleaded in the Amended Complaint, fail to state a plausible claim that Lilly did not feel free to leave as an unlawful seizure claim requires. *Id.* at 6-

---

[3] Although in the October 3, 2012 D&O, Judge Arcara discussed the Fourth Amendment claim with respect to Lilly based on both the July 12, 2008 incident in which Lilly was directed by Defendant to leave his in-laws' property, as well as the July 16, 2009 incident in which Lilly, while at his in-laws' home, allegedly was harassed by Defendant who repeatedly drove his patrol vehicle past the Smiths' home, October 3, 2012 D&O at 16-17, Lilly pleaded additional allegations in connection with the events of July 12, 2008, *compare* Amended Complaint ¶¶ 76-85, with Complaint ¶¶ 69-74, whereas the allegations pertaining to the July 16, 2009 incident are identical in the Amended Complaint and the original Complaint, *compare* Amended Complaint ¶¶ 126-27, with Complaint ¶¶ 115-16. Nor do Plaintiffs assert any argument in opposition to Defendant's motion seeking dismissal of the Fourth Amendment unlawful seizure claim relative to the events of July 16, 2009. Accordingly, Plaintiffs did not amend the Fourth Amendment claim with regard to the July 16, 2009 incident, such that the Fourth Amendment claim, insofar as it is based on the events of July 16, 2009, remains dismissed for failure to state a claim, and the Fourth Amendment claim is addressed only with regard to the events of July 12, 2008.

11.

Plaintiffs argue in opposition[4] that newly asserted allegations in the Amended Complaint sufficiently state that Defendant unlawfully seized Lilly in violation of the Fourth Amendment by alleging that "Lilly was never free to terminate the encounter" with Defendant because the close proximity in which Defendant and Officer Pinzotti stood with Lilly between them rendered in impossible for Lilly to "disengage" from between the officers without coming into physical contact with either officer, and thus subjecting Lilly to arrest for "assault and battery or obstruction of governmental regulations."  Plaintiffs' Response at 6 (citing Amended Complaint ¶¶ 79, 81).  Plaintiffs further allege Lilly was "entrapped . . . to take action that would result in his arrest." *Id.* (citing Amended Complaint ¶ 80).  Plaintiff maintains that no reasonable person would have felt free to leave under the circumstances alleged in the Amended Complaint. *Id.* at 7.

In further support of dismissal, Defendant reasserts there is no "stand alone" violation of a constitutional right such that Plaintiffs' failure to assert the Fourth Amendment unlawful seizure claim as a civil rights violation is fatal to the claim. Defendant's Reply at 7.  Defendant further maintains the allegations of the Amended Complaint fail to establish an unlawful seizure because Lilly's alleged fear he would be arrested if he tried to leave as Defendant directed is insufficient as a matter of law to state a claim for constructive seizure under the Fourth Amendment. *Id.* at 8.

---

[4] For no apparent reason, Plaintiffs' argument in opposition to Defendant's motion to dismiss the Fourth Amendment unlawful seizure claim is entitled "First Amendment Right to Peaceable Assembly." Plaintiffs' Response at 6.  Because the text following such title discusses only Lilly's alleged unlawful seizure claim, the court considers the title to be a typographical, clerical, or editing error.

Preliminarily, although Defendant characterizes Plaintiffs' Second Claim as brought "directly" under the Fourth Amendment, Defendant's Memorandum at 5-6, an argument to which Plaintiffs do not respond, Plaintiffs' failure to specifically and more accurately denominate the alleged Fourth Amendment violation of unlawful seizure as a civil rights claim is not fatal as the court is required to liberally construe civil rights complaints, regardless of whether a plaintiff is represented by counsel.  *Leonard Partnership*, 779 F.Supp. at 234 (district court considered claim that defendant violated Fourteenth Amendment due process rights of plaintiff, who was represented by legal counsel, as based on § 1983 even though complaint was devoid of any reference to § 1983, given that defendant had construed claim as based on § 1983 and, thus, would not be prejudiced by such construction).  Significantly, in the instant case, that Defendant has construed the Amended Complaint as alleging Lilly's Fourth Amendment unlawful seizure claim under § 1983 is established by Defendant's discussion in support of Defendant's motion.  *See* Defendant's Memorandum at 6-11 (analyzing Lilly's Fourth Amendment claim in the alternative as a § 1983 civil rights claim).  As such, the court's construction of the Amended Complaint as alleging unlawful seizure in violation of the Fourth Amendment will result in no prejudice to Defendants and will further the interest of justice.  Fed.R.Civ.P. 1 (the Federal Rules of Civil Procedure "shall be construed and administered to secure the just . . . determination of every action. . . . "); Fed.R.Civ.P. 8(e) ("Pleadings must be construed so as to do justice."). The court thus addresses the merits of the Fourth Amendment unlawful seizure claim with regard to the events involving Lilly on July 12, 2008.

"A person has been 'seized' within the meaning of the Fourth Amendment only if,

in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). "A police officer may make a seizure by a show of authority and without the use of physical force, but there is no seizure without actual submission; otherwise, there is at most an attempted seizure, so far as the Fourth Amendment is concerned." *Brendlin v. California*, 551 U.S. 249, 254 (2007). "When the actions of the police do not show an unambiguous intent to restrain or when an individual's submission to a show of governmental authority takes the form of passive acquiescence, there needs to be some test for telling when a seizure occurs in response to authority, and when it does not." *Id.* at 255. The factors indicative of a seizure include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Mendenhall*, 446 U.S. at 554. Additionally, when "a person 'has no desire to leave' for reasons unrelated to the police presence, the 'coercive effect of the encounter' can be measured better by asking whether 'a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter.'" *Brendlin*, 551 U.S. at 255 (quoting *Florida v. Bostick*, 501 U.S. 429, 435-36 (1991)). *See also United States v. Drayton*, 536 U.S. 194, 201 (2002) ("If a reasonable person would feel free to terminate the encounter, then he or she has not been seized."). Furthermore, "[t]he proper inquiry necessitates a consideration of 'all the circumstances surrounding the encounter.'" *Drayton*, 536 U.S. at 201 (citing *Bostick*, 501 U.S. at 439).

District courts within the Second Circuit have determined a plaintiff sufficiently

pleads a seizure by alleging he was ordered, by an off-duty police officer, to remain at the scene, *Martinsky v. City of Bridgeport*, 814 F.Supp.2d 130, 153-54 (D.Conn. 2011); and that a police officer "held on to" his identification and ordered the plaintiff to "stay put" while the police officer wrote out a summons. *See*, *e.g.*, *Vasquez v. Pampena*, 2009 WL 1373591, at *2 (E.D.N.Y. May 18, 2009). In contrast, a plaintiff's allegations he complied with a police officer's instruction to stand on a small strip of lawn between the curb and the sidewalk and answer questions because the plaintiff felt he had no choice otherwise despite no allegations that officer used or threatened any use of force, displayed a weapon, or touched the plaintiff, failed to alleged unlawful seizure in violation of Fourth Amendment. *Pietrangelo v. Alvas Corp.*, 664 F.Supp.2d 420, 436 (D.Vt. 2009).

Defendant relies on *Oliphant v. Villano*, 2012 WL 3779160 (D.Conn. Aug. 31, 2012) (hereinafter, "*Oliphant*"), Defendant's Reply at 8, for the proposition that Lilly's alleged fear that he would be arrested for assault or obstruction with government regulations if, in attempting to extricate himself from his position between Defendant and Officer Pinzotti to vacate the premises, as Defendant directed, Lilly were to come into physical contact with either law enforcement officer, "is insufficient as a matter of law to sustain [*sic*] a claim for constructive seizure under the Fourth Amendment." The facts of *Oliphant*, however, differ substantially from the instant case. In particular, *Oliphant* involved a claimed unlawful seizure by a plaintiff who alleged he felt afraid and threatened by the presence outside of his apartment of several police officers, one of whom attempted to unlock the back door to the plaintiff's apartment with a key and, failing to do so, proceeded to "aggressively kick" the door several times, while another

officer was "handling a large dog." *Oliphant*, 2012 WL at *2, *5. An officer then

knocked on the back door to the plaintiff's apartment, announced the police presence

and requested the plaintiff come outside and give a statement regarding an earlier

incident involving the plaintiff's alleged assault of his girlfriend. *Id.* The plaintiff,

however, instead of complying, stuck his head out of a second floor window, and

shouted obscenities at the police officers who fifteen minutes later, upon realizing the

plaintiff was not going to cooperate, left the premises. *Id.* In the ensuing civil rights

action, the court found the plaintiff had not been unlawfully seized because there was

no physical contact between any officer and the plaintiff, the plaintiff was never "held"

anywhere by the officers, and the plaintiff's defiant refusal to speak with the officers

demonstrated the plaintiff never submitted to the police officers' authority. *Id.* at *5. In

contrast, in the instant case, the facts as alleged by Lilly can be reasonably construed

as establishing Lilly had submitted to Defendant's assertion of authority.

Specifically, Lilly alleges he feared that the close proximity in which Defendant

and Officer Pinzotti had positioned themselves to Lilly made it very likely that if Lilly

moved to leave the premises of his in-laws' property, he would come into physical

contact with one of both law enforcement officials, thereby risking criminal charges such

that Lilly did not feel free to terminate the encounter. Amended Complaint ¶¶ 79-85.

Consideration of all the circumstances surrounding Lilly's encounter with Defendant, as

required, *Drayton*, 536 U.S. at 201, includes the alleged history of hostility between

Defendant and Lilly, as well as with members of Lilly's extended family, and that

Defendant's actions in standing in close proximity to Lilly, with Officer Pinzotti standing

immediately behind Lilly, and shouting at Lilly constituted an assertion of Defendant's

authority at a State Trooper.  Based on such circumstances, it is plausible that a reasonable person could believe, as Lilly alleges, that should Lilly attempt to extricate himself from the presence of Defendant and Officer Pinzotti, and in doing so make physical contact with either law enforcement official, Lilly would be arrested for assault and battery.  As such, at best, Defendant's actions with regard to Lilly on July 12, 2008 were sufficiently ambiguous that it is therefore plausible a reasonable juror could find Lilly, in light of all the circumstances, did not feel free to terminate his encounter with Defendant and, as such, was seized.  *Brendlin*, 551 U.S. at 255.

Accordingly, Defendant's motion should be DENIED insofar as Defendant seeks dismissal of Plaintiffs' Fourth Amendment unlawful seizure claim with regard to the events of July 12, 2008.


**3.      State Law Intentional Infliction of Emotional Distress Claim**

Plaintiffs assert under New York common law an unspecified claim for intentional infliction of emotional distress ("Third Claim").  Defendant argues in support of his motion to dismiss the Third Claim that because in response to Defendant's earlier motion seeking dismissal of the original complaint, Plaintiffs withdrew the intentional infliction of emotional distress claim that is identical to the Third Claim alleged in the Amended Complaint, Judge Arcara's grant of permission to file an Amended Complaint, October 3, 2012 D&O at 12 (dismissing Smith's First Amendment claim for retaliatory prosecution with leave to replead), and 17 (dismissing Lilly's Fourth Amendment unlawful seizure claim with leave to replead), did not extend to the intentional infliction of emotional distress claim, Defendant's Memorandum at 20-21; the claim is time-

barred as filed beyond the one-year limitations period applicable to intentional tort claims pursuant to N.Y. CPLR § 215[3], *id.* at 21-22; and that with the dismissal of Plaintiffs' federal claims, this court is without supplemental jurisdiction over Plaintiffs' pendent state claim. *Id.* at 22. Plaintiffs have not responded in opposition to Defendant's motion on their Third Claim.

"In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." *N.Y. Mercantile Exch. Inc. v. Intercontinental Exch., Inc.*, 497 F.3d 109, 119 (2d Cir. 2007) (internal quotation omitted). *See also Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n. 7 (1988) (noting where all federal claims have been dismissed under federal law, the district court has discretion whether to exercise supplemental jurisdiction over pendent state law claims, based on consideration of several factors, including "judicial economy, convenience, fairness, and comity"). In the instant case, assuming, *arguendo*, the District Judge agrees with the recommendation that Defendant's motion to dismiss be denied with regard to Smith's First Amendment retaliatory prosecution claim, and Lilly's Fourth Amendment unlawful seizure claim, a federal claim will remain in the action providing a basis for supplemental jurisdiction over Plaintiffs' pendent state common law claim.

Nevertheless, Plaintiffs previously withdrew what is essentially the same intentional infliction of emotional distress claim asserted in the original complaint, Complaint ¶¶ 128-30, based on an admission that upon their review of the applicable statute of limitations, the claim was time-barred. Because the allegations comprising the emotional distress claim asserted in the Amended Complaint, Amended Complaint ¶¶ 139-41, are identical to those comprising the emotional distress claim asserted in the

original complaint, Complaint ¶¶ 128-30, Plaintiffs essentially have conceded the emotional distress claim alleged in the Amended Complaint is time-barred.

Furthermore, under New York law, intentional torts are subject to a one-year statute of limitations.  N.Y. CPLR § 215[3]; *Goldner v. Sullivan, Gough, Skipworth, Summers & Smith*, 482 N.Y.S.2d 606, 608 (4th Dep't 1984) (dismissing intentional infliction of emotional distress claim as time-barred under N.Y. CPLR § 215[3]).  In the instant case, the most recent allegation against Defendant asserted in the Amended Complaint is July 16, 2009, Amended Complaint ¶ 126 (alleging that while Lilly was at the Smiths' home, Defendant harassed Lilly by repeatedly driving his patrol vehicle past the Smiths' house), more than one year before this action was commenced on June 24, 2011.  Accordingly, Plaintiffs' Third Claim alleging intentional infliction of emotional distress should be DISMISSED as time-barred.

## CONCLUSION

Based on the foregoing, Defendant's motion to dismiss (Doc. No. 37), should be GRANTED in part as to the claims for violation of the First Amendment right to peaceable assembly and intentional infliction of emotional distress, and DENIED in part as to the claimed retaliatory prosecution in violation of the First Amendment and unlawful seizure in violation of the Fourth Amendment.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      June 27, 2013
            Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:     June 27, 2013
           Buffalo, New York