UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

EDWARD M. LILLY,

                           Plaintiff,

              v.

BEN CAMPBELL, New York State Trooper,

                         Defendant.
_____

                                                  REPORT
                                                  and
                                  RECOMMENDATION

                                11-CV-00540A(F)

APPEARANCES:          JAMES OSTROWSKI, ESQ.
                        Attorney for Plaintiff
                        63 Newport Avenue
                        Buffalo, New York  14216

                        BOND, SCHOENECK & KING, PLLC
                        Attorneys for Defendant
                        MITCHELL J. BANAS, JR.,
                        RIANE F. LAFFERTY, and
                        BEVERLY SUZANNE BRAUN, of Counsel
                        Avant Building
                        200 Delaware Avenue
                        Suite 900
                        Buffalo, New York  14202

## **JURISDICTION**

This case was initially referred for all pretrial matters including preparation of a

report and recommendation on dispositive motions, by Honorable Richard J. Arcara, on

November 3, 2012 (Dkt. 33), was re-referred on March 7, 2016 (Dkt. 73), and again on

April 28, 2017 (Dkt. 84).  The matter is presently before the court on Defendant's motion

for summary judgment filed June 29, 2018 (Dkt. 104).

## BACKGROUND

Plaintiff Edward M. Lilly ("Plaintiff" or "Lilly") commenced this civil rights action pursuant to 42 U.S.C. § 1982 on June 24, 2011, alleging Defendant New York State Trooper Ben Campbell ("Defendant"), unlawfully seized Plaintiff in violation of the Fourth Amendment.[1]  On June 29, 2018, Defendant filed a motion for summary judgment (Dkt. 104) ("Defendant's Motion"), attaching the Declaration of Riane F. Lafferty, Esq. (Dkt. 104-1) ("Lafferty Declaration"), exhibits A through K (Dkts. 104-2 through 104-12) (Defendant's Exh(s). __"), the Memorandum of Law in Support of Defendant's Motion for Summary Judgment (Dkt. 104-13) ("Defendant's Memorandum"), and Defendant's Statement of Material Facts Pursuant to Local Rule 56(a)(1) (Dkt. 104-14) ("Defendant's Statement of Facts").  In opposition to summary judgment, Plaintiff filed on August 6, 2018, the Affidavit of Edward Lilly (Dkt. 106) ("Plaintiff's Affidavit"), attaching an index (Dkt. 106-1), Plaintiff's Response to Defendant's Statements of Undisputed Facts (Dkt. 106-2) ("Plaintiff's Statement of Facts"), and Plaintiff's Memorandum of Law in Opposition to Summary Judgment (Dkt. 106-3) ("Plaintiff's Response").  On August 21, 2018, Defendant filed the Reply Memorandum of Law in Further Support of Defendant's Motion for Summary Judgment (Dkt. 108) ("Defendant's Reply").  Oral argument was deemed unnecessary.

Based on the following, Defendant's Motion should be GRANTED or alternatively, should be DENIED.

---

[1] Following earlier dispositive motions to dismiss (Dkts. 21, 37 and 64), respectively seeking dismissal of the original Complaint (Dkt. 1), the Amended Complaint (Dkt. 31), and the Second Amended Complaint (Dkt. 60), additional original Plaintiffs Joanne Smith and Donald Smith, and original Defendant New York State Police, were terminated as parties to this action, and all claims save Lilly's Fourth Amendment unlawful seizure claim that is the subject of the instant motion were dismissed.  The court's recitation of the Background and Facts thus is limited to only what is necessary for resolution of this sole remaining claim.

**FACTS**[2]

This action arises from the brief detention on July 12, 2008, of Plaintiff Edward M. Lilly ("Plaintiff" or "Lilly"), by Defendant New York State Trooper Ben Campbell ("Defendant" or "Campbell"), outside the home of Plaintiff's in-laws, Joanne and Donald Smith ("the Smiths"), located at 630 Cayuga Street in Lewiston, New York ("Lewistion") ("the Smiths' house," "the residence," or "the premises").  The Smiths' son and Defendant's brother-in-law Tom Smith ("Tom Smith") also resided in the residence. Defendant and Lewiston Police Officer John Penzotti ("Penzotti") (together, "the officers"), responding to a call earlier that day at a café ("the café") in Lewiston regarding an incident involving Tom Smith, went first to the café and, upon learning Tom Smith was no longer there, proceeded to the Smiths' house where the officers thought they might find Tom Smith.  The officers arrived at the Smith's house in a police vehicle, which they parked at the side of the road, and proceeding on foot to the front door of the residence.  Donald Smith exited through the residence's front door to meet the officers who asked to see Tom Smith, with Donald Smith advising Tom Smith was not there. While Donald Smith spoke with the officers, Plaintiff arrived at the Smith's house where Plaintiff parked his vehicle in the driveway.  Intending to visit with his in-laws, Plaintiff exited his vehicle and walked toward the Smiths' house, but upon observing Plaintiff, Defendant yelled to Plaintiff that Plaintiff did not belong at the residence, that the officers' presence was "none of [Plaintiff's][3] business," and that Plaintiff should "leave now."  Second Amended Complaint ¶ 16.  Plaintiff, aware of prior encounters between

---

[2] Taken from the pleadings and motion papers filed in this action.
[3] Unless otherwise indicated, bracketed material has been added.

Defendant and the Smiths, requested Defendant cease harassing the Smiths, advising that because the Smiths were his in-laws, Defendant had a right to be at the residence.

While engaged in the verbal exchange, the officers approached Plaintiff who was standing in the driveway near his parked vehicle.  Defendant stood between six inches (Plaintiff's Affidavit ¶ 28), and three feet (Defendant's Statement of Fact ¶ 13) away, facing Plaintiff, with Penzotti standing between a foot and a half and three feet behind Plaintiff, with the three remaining in those positions for several minutes, while Defendant continued to yell at Plaintiff to leave while "flailing his arms in an agitated manner and [ ] acting irrationally."  Second Amended Complaint ¶ 18.  Plaintiff alleges he repeatedly asked the officers why they were at the residence, but neither responded.  *Id.* ¶ 21. Plaintiff maintains he was confined between his vehicle and the officers, *id.* ¶ 18, and Plaintiff's awareness of Defendant's previous encounters with all three of the Smiths, caused Plaintiff to believe he was entrapped such that any attempt by Plaintiff to extricate himself from his position between the officers and his vehicle so as to comply with Defendant's demand that Plaintiff leave would result in Plaintiff coming into physical contact with one or both of the officers for which the officers would then arrest Plaintiff for assaulting an officer, such that Plaintiff was seized  *Id.* ¶¶ 19-22.  Eventually, Defendant walked away from Plaintiff without ever drawing his weapon, or physically contacting Plaintiff, and Plaintiff remained at the premises.  Plaintiff's Affidavit ¶¶ 46-48.

## DISCUSSION

**1.     Summary Judgment**

Defendant moves for summary judgment on Plaintiff's remaining claim, arguing Defendant is qualifiedly immune from liability for his challenged conduct, Defendant's Memorandum at 5-9, and, alternatively, Plaintiff cannot establish a Fourth Amendment violation by Defendant. *Id.* at 9-13.  In opposition, Plaintiff disputes that Defendant is entitled to qualified immunity, Plaintiff's Response at 1-3, and, alternatively, argues the undisputed facts establish Plaintiff was unreasonably seized in violation of the Fourth Amendment. *Id.* at 3-4.  In further support of summary judgment, Defendant maintains Plaintiff's argument in opposition only serves to reinforce Defendant's assertion of qualified immunity, Defendant's Reply at 1-3, as well as that no Fourth Amendment violation occurred, *id.* at 3-5, and that Plaintiff points to no genuine issue of material fact requiring trial on Plaintiff's Fourth Amendment claim. *Id.* at 5-8.

Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003).  The court is required to construe the evidence in the light most favorable to the non-moving party. *Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011).  The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be

drawn, a moving party cannot obtain a summary judgment. *Celotex*, 477 U.S. at 322; *see Anderson*, 477 U.S. at 247-48 ("summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). "A fact is material if it 'might affect the outcome of the suit under governing law.'" *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson*, 477 U.S. at 248).

"[T]he evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988)). A defendant is entitled to summary judgment where "'the plaintiff has failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on'" an essential element of a claim on which the plaintiff bears the burden of proof. *In re Omnicom Group, Inc., Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010) (quoting *Burke v. Jacoby*, 981 F.2d 1372, 1379 (2d Cir. 1992)). Once a party moving for summary judgment has made a properly supported showing of the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor. *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995). "[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Hayes v. New York City Dept. of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996). "An issue of fact is genuine and material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Cross Commerce*

*Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 162 (2d Cir. 2016) (citing *SCR Joint*

*Venture L.P. v. Warshawsky*, 559 F.3d 133,137 (2d Cir. 2009)).

**2.     § 1983 Claim**

Plaintiff's claim that he was subjected to an unlawful seizure alleges a violation of

Plaintiff's civil rights under 42 U.S.C. § 1983, which "allows an action against a 'person

who, under color of any statute, ordinance, regulation, custom, or usage, of any State . .

. subjects, or causes to be subjected, any citizen of the United States . . . to the

deprivation of any rights, privileges, or immunities secured by the Constitution and the

laws.'"  *Patterson v. County of Oneida, New York*, 375 F.3d 206, 225 (2d Cir. 2004)

(quoting 42 U.S.C. § 1983).  Section 1983, however, "'is not itself a source of

substantive rights.'"  *Id.* (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).

Rather, § 1983 "merely provides 'a method for vindicating federal rights elsewhere

conferred' . . . ."  *Id.*  Further, it is basic that liability under § 1983 requires a defendant's

personal involvement in the alleged deprivation of a federal right.  *See Warren v. Pataki*,

823 F.3d 125, 136 (2d Cir. 2016) ("To establish a section 1983 claim, 'a plaintiff must

establish a given defendant's personal involvement in the claimed violation in order to

hold that defendant liable in his individual capacity.'" (quoting *Patterson v. County of*

*Oneida, N.Y.*, 375 F.3d 206, 229 (2d Cir. 2004))).

The elements of a § 1983 claim include (1) the deprivation of a federal

constitutional or statutory right, and (2) by a person acting under color of state law.

*Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (citing *Gomez v. Toledo*, 446 U.S. 640

(1980)).  Thus, "[t]he first step in any such claim is to identify the specific constitutional

right allegedly infringed."  *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989); and

*Baker*, 443 U.S. at 140).  In the instant case, the parties do not dispute that Plaintiff's unlawful seizure claim asserts a violation of Plaintiff's Fourth Amendment right to be free from an unreasonable seizure; rather, what is disputed is whether Defendant is qualifiedly immune from liability for the alleged unlawful seizure, as well as whether Plaintiff was in fact seized by Defendant at the Smiths' house on July 12, 2008.

### A.    Qualified Immunity

"Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'"  *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Saucier v. Katz*, 553 U.S. 194 (2001)).  "Qualified immunity shields government officials from claims for money damages unless a plaintiff adduces facts showing that (1) the official violated a statutory or constitutional right, and (2) the right was 'clearly established' at the time of the challenged conduct.'"  *Mara v. Rilling*, 921 F.3d 48, 68 (2d Cir. 2019) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "If the answer to the first question is no, 'there is no necessity for further inquiries concerning qualified immunity,'" *id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)), "because a defendant has no need for an immunity shield where there is no viable constitutional claim.'"  *Id.* (citing *Zalaski v. City of Hartford*, 723 F.3d 382, 388 (2d Cir. 2013), and *Holcomb v. Lykens*, 337 F.3d 217, 223-25 (2d Cir. 2003)).  "But even if the answer is yes, or not definitely no, a defendant may still be entitled to qualified immunity if the right was not clearly established at the time of his challenged actions [, and] a court that decides this second question in a defendant's favor may award qualified immunity without conclusively answering the first."  *Id.* (citing *al-Kidd*, 563 U.S. at 735).  "Qualified immunity thus affords government officials

'breathing room' to make reasonable – even if sometimes mistaken – decisions, and 'protects all but the plainly incompetent or those who knowingly violate the law' from liability for damages." *DiStiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012)).

"An officer is entitled to qualified immunity if '*any* reasonable officer, out of the wide range of reasonable people who enforce the laws in this country, *could have* determined that the challenged action was lawful.'" *Muschette ex rel. A.M. v. Gionfriddo*, 910 F.3d 65, 70-71 (2d Cir. 2018) (quoting *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016) (italics in original)). "Whether qualified immunity applies in a particular case 'generally turns on the objective legal reasonableness' of the challenged action, 'assessed in light of the legal rules that were clearly established at the time it was taken,'" at least at the circuit level. *Distiso*, 691 F.3d at 240 (quoting *Messerschmidt*, 565 U.S. at 546). "For law to be clearly established, it is not necessary to identify a case directly on point. But precedent must have spoken with sufficient clarity to have placed the constitutional question at issue beyond debate." *Mara*, 921 F.3d at 68 (citing *al-Kidd*, 563 U.S. at 741). "Specifically, the law must be so clearly established with respect to the '*particular* conduct' and the 'specific context' at issue that 'every reasonable official would have understood that his conduct was unlawful.'" *Id.* (quoting *Mullenix v. Luna*, __ U.S. __; 136 S.Ct. 305, 308 (2015) (italics in original)). If the challenged conduct's illegality "would not be so apparent, officers are entitled to qualified immunity." *Id.* (citing *Zalaski*, 723 F.3d at 389). "'In short, if at least some reasonable officers in the defendant's position 'could have believed that the challenged conduct was within the bounds of appropriate police responses,' the defendant officer is

entitled to qualified immunity.'"  *Id.* (quoting *Zalaski*, 723 F.3d at 389 (quoting *Saucier*,

533 U.S. at 208)).  "This standard is deliberately 'forgiving,'" *id.* (quoting *Amore v.*

*Novarro*, 624 F.3d 522, 530 (2d Cir. 2010)), "to give public officials 'breathing room to

make reasonable but mistaken judgments,' without fear of disabling liability."  *Id.*

(quoting *Messerschmidt*, 565 U.S. at 546).  Simply put, "qualified immunity protects 'all

but the plainly incompetent or those who knowingly violate the law.'"  *Id.* (quoting *al-*

*Kidd*, 563 U.S. at 743 (further quotation marks and citation omitted)).

 "'Whether a defendant officer's conduct was objectively reasonable is a mixed

question of law and fact.'"  *Manganiello*, 612 F.3d at 164 (quoting *Zellner v. Summerlin*,

494 F.3d 344, 367 (2d Cir. 2007)).  "The factfinder must determine any disputed

material facts, and on the basis of the facts permissibly found, the court must decide

'whether it was objectively reasonable for the officer to believe that his conduct did not

violate a clearly established right, *i.e.*, whether officers of reasonable competence could

disagree as to the lawfulness of such conduct.'"  *Id.*  "[T]he doctrine shields officers from

suit for damages if 'a reasonable officer could have believed' his action 'to be lawful, in

light of clearly established law and the information he possessed.'"  *Id.* (quoting *Hunter*

*v. Bryant*, 502 U.S. 224, 227 (1991) (further citation and quotation marks omitted)).

"That is, '[e]ven if the right at issue was clearly established in certain respects . . . an

officer is still entitled to qualified immunity if officers of reasonable competence could

disagree on the legality of the action at issue in its particular factual context.'"  *Id.*

(quoting *Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007) (further citation and quotation

marks omitted)).

In the instant case, Defendant argues he is entitled to qualified immunity because the Fourth Amendment right, as asserted by Plaintiff, was not clearly established as of Plaintiff's encounter with Defendant in the driveway of the Smiths' house on July 12, 2008, but presents a "novel" issue supporting qualified immunity. Defendant's Memorandum at 6-9. In opposition, Plaintiff argues Defendant merely cites in support of summary judgment the same cases on which Defendant relied in support of prior motions to dismiss for failure to state a claim. Plaintiff's Response at 1-3. In further support of his motion, Defendant maintains Plaintiff's opposition overlooks that the matter is before the court not for failure to state a claim but for summary judgment on qualified immunity which requires Plaintiff show the right he maintains Defendant violated was clearly established at the time of the alleged violation. Defendant's Reply at 2-4.

Although "[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest . . . ," *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (quoting *Weyant*, 101 F.3d at 852). *See Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014) ("Probable cause is a complete defense to a constitutional claim for false arrest . . . ." (citing *Singer v. Fulton County Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995))), in the instant case, the probable cause inquiry is irrelevant because there is no allegation that Defendant was attempting to arrest Plaintiff; instead, the inquiry is whether Defendant, under the circumstances, knew or should have known he had created a situation where Plaintiff did not feel free to leave and, thus, was seized without probable cause. *See Mara*, 921 F.3d at 69-70 (whether law enforcement officers had probable cause to arrest irrelevant to qualified immunity

determination when such officers do not claim to have arrested the plaintiff such that at issue was only whether, under the circumstances, the plaintiff who accompanied the officers to a campus security officer and voluntarily engaged in a conversation, was detained and thus, seized within the meaning of the Fourth Amendment).  Toward that end, Plaintiff maintains his position in close proximity between the two officers constituted an unlawful seizure because Plaintiff could not comply with Campbell's demand that Plaintiff leave the premises without coming into physical contact with one or both of the officers, which Plaintiff feared would lead to his arrest for assault of a law enforcement officer, such that Plaintiff was seized without probable cause.  Defendant maintains Plaintiff was not seized but was free, and in fact ordered by Campbell, to leave.

"The Fourth Amendment protects against 'unreasonable . . . seizures' of persons." *Mara*, 921 F.3d at 69 (quoting U.S. CONST. amend. IV).  "A person is seized within the meaning of the Fourth Amendment if, under the totality of the circumstances, a reasonable person would have believed that he was not free to leave." *Id.* at 70 (citing *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988), and *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).  "The standard is objective, looking not to what a particular defendant may have thought, but to what 'the typical reasonable person would have understood. . ..'" *Id.* (quoting *Florida v. Jimeno*, 500 U.S. 248, 251 (1991)).  "In applying this standard to a claim of qualified immunity, a court necessarily engages in a two-part objective inquiry, asking not only what a reasonable person would have understood about his ability to leave – which determined whether there was a constitutional violation – but also what every reasonable police officer would have

understood from established precedent – which determines whether the right was clearly established." *Id.* "'Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.'" *Kisela v. Hughes*, __ U.S. __; 138 S.Ct. 1148,1152 (2018) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)).

"'[C]ircumstances that might indicate a seizure' include 'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.'" *Simon v. City of New York*, 893 F.3d 83, 99 (2d Cir. 2018) (quoting *Kaupp v. Texas*, 538 U.S. 626, 630 (2003)). "This 'necessarily imprecise' test 'is designed to assess the coercive effect of police conduct, taken as a whole, rather than to focus on particular details of that conduct in isolation.'" *Id.* (quoting *Chesternut*, 486 U.S. at 573). "'As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy [sufficient to constitute an arrest or seizure for Fourth Amendment purposes].'" *DiGennaro v. Town of Gates Police Department*, 2013 WL 3097066, at * 18 (W.D.N.Y. June 18, 2013) (quoting *Mendenhall*, 446 U.S. at 554)). The circumstances in the instant case establish Defendant is entitled to qualified immunity on Plaintiff's Fourth Amendment claim because the circumstances do not establish either prong of the applicable two-part test, *i.e.*, "that (1) the official violated a statutory or constitutional right, and (2) the right was 'clearly established' at the time of the challenged conduct." *Mara*, 921 F.3d at 68.

In the instant case, with regard to the first prong, none of the circumstances recognized by the Second Circuit as suggestive of a seizure is present.  In particular, despite the presence of two officers, Plaintiff describes only Campbell as acting in a "threatening" manner, and neither officer is alleged to have displayed a weapon nor to have come into physical contact with Plaintiff.  Although Plaintiff asserts Campbell yelled at him, and flailed his arms, Plaintiff also maintains that Campbell was insisting Plaintiff leave the premises, a request that is directly at odds with the requirements of seizure, specifically, that a reasonable person in such circumstances would have believed he or she was not free to leave.  *See Mendenhall*, 446 U.S. at 554; *Mara*, 921 F.3d at 70.  Furthermore, Plaintiff's asserted belief that the close proximity to the two officers essentially entrapped Plaintiff insofar as Plaintiff, in attempting to comply with Campbell's demand to leave, would almost certainly come into physical contact with one or both officers, which contact the officers could then interpret as an assault, is not necessarily a conclusion that would be reached by other persons under similar circumstances.  *See Mara*, 921 F.3d at 70-72 (affirming district court's finding of qualified immunity with regard to unlawful seizure claim alleged by § 1983 plaintiff who voluntarily accompanied law enforcement officers to university's public safety office where plaintiff, without presence of attorney, was interviewed for more than one hour about circumstances of an assault the defendant officers maintained, despite being aware of evidence to the contrary, they suspected plaintiff had committed, and such interview included repeated assertions that witnesses to the assault had identified plaintiff as the assailant, because "when these circumstances are viewed in context, they do not admit an objectively reasonable belief that [the plaintiff] was even under

arrest."). Accordingly, the court does not find that under the circumstances, Campbell's conduct violated Plaintiff's Fourth Amendment right to be free from unreasonable seizures.

Analysis of the second prong even more strongly supports qualified immunity as, to date, not only is there no case from the Second Circuit directly on point, but no court within the Second Circuit "ha[s] spoken with sufficient clarity to have placed the constitutional question at issue beyond debate" under sufficiently similar circumstances. *Mara*, 921 F.3d at 68-69. Significantly, Plaintiff does not point to any such case and the court's extensive research has not revealed any. *See Corsini*, 731 Fed.Appx. 15, 18 (2d Cir. Apr. 13, 2018) (affirming dismissal on qualified immunity grounds of Fourth Amendment unlawful seizure claim by § 1983 plaintiff who alleged that for a three-hour period, police officers, without an arrest warrant, incessantly knocked on door and rang doorbell to the plaintiff's apartment, and landlord placed key on the door's keyhole and turned the lock, yet neither the police nor the landlord entered the premises, in the absence of any Supreme Court or Second Circuit precedent clearly establishing a Fourth Amendment right under similar circumstances). Plaintiff thus also fails to establish the second prong on the test for qualified immunity.

Because neither prong for qualified immunity has been established, Defendant's Motion should be GRANTED based on qualified immunity.

B.      Fourth Amendment Claim[4]

Plaintiff's Fourth Amendment claim is that he was seized in violation of the Fourth Amendment when Campbell repeatedly ordered Plaintiff to leave the premises despite Plaintiff being "hemmed" between Penzotti and Campbell who stood, according to Plaintiff, only six inches in front of Plaintiff, failing his arms, so as to ensure any attempt by Plaintiff to comply with the demand to leave would force Plaintiff into physical contact with a law enforcement officer, supporting Plaintiff's potential arrest for an assault on such officer.  Defendant argues in support of summary judgment on Plaintiff's Fourth Amendment unlawful seizure claim that Plaintiff cannot establish a Fourth Amendment violation because, at most, Plaintiff is complaining about a "mere subjective fear about the remote possibility of an arrest . . . ."  Defendant's Memorandum at 12.  In opposition, Plaintiff asserts that no reasonable person would have believed he was free to leave under the circumstances, such that Plaintiff was seized by Campbell in violation of the Fourth Amendment.  Plaintiff's Response at 3-4.  In further support of summary judgment, Defendant argues all relevant caselaw supports the conclusion that no Fourth Amendment violation occurred, Defendant's Reply at 3-5, and Plaintiff has failed to raise any genuine issue of fact requiring trial.  *Id.* at 5-8.  Here, the record shows material issues of fact preclude summary judgment on the merits of Plaintiff's Fourth Amendment claim

---

[4] Should the District Judge disagree with the initial recommendation that Defendant's Motion for summary judgment based on qualified immunity be granted, Defendant's alternative request for summary judgment based on the merits of Plaintiff's Fourth Amendment claim is addressed.

In particular, insofar as Defendant relies in support of summary judgment on the fact that Defendant never intended to arrest Plaintiff, Defendant's Memorandum at 9, the test for a seizure is whether, under the circumstances, a reasonable person would not feel free to leave, *Mendenhall*, 446 U.S. at 554; *Mara*, 921 F.3d at 70, rendering Defendant's intent irrelevant.  Further, although without any actual submission to a law enforcement officer's show of authority there can be no seizure under the Fourth Amendment, but only an attempted seizure, *Brendlin v. California*, 551 U.S. 249, 254 (2007), the facts of the instant case indicate that Plaintiff perceived Campbell's allegedly positioning himself within inches of Plaintiff's face, with Penzotti close behind Plaintiff, and flailing his arms while yelling at Plaintiff, albeit to leave, to be an attempt to force Plaintiff to make physical contact with one or both officers, thereby subjecting Plaintiff to an arrest for assault.  The portions of Plaintiff's deposition testimony, cited by Defendant in support of summary judgment, Defendant's Reply at 6-7, including that Plaintiff "stood still as a statute" and "did not say a word to Trooper Campbell," Plaintiff's Dep. Tr.[5] at 42, and did not ask the officers to step back to allow Plaintiff to depart from the premises without making contact with the officers, *id*. at 45, in combination with Plaintiff's perception that his in-laws had been "menaced long enough" and "terrorized" by Defendant, *id*. at 33, can also be construed as supporting Plaintiff's assertion that he reasonably believed he was not free to leave and, thus, was seized.

Accordingly, genuine issues of material facts preclude the court from ruling on Plaintiff's perception of the circumstances, including whether Plaintiff believed he was

---

[5] References to "Plaintiff's Dep. Tr." are to pages of the transcript of Plaintiff's deposition, filed as Defendant's Exh. C (Dkt. 104-4).

free to leave, such that summary judgment on the merits of Plaintiff's Fourth

Amendment claim should be DENIED.

## **CONCLUSION**

Based on the foregoing, Defendant's Motion (Dkt. 104), should be GRANTED on

the ground of qualified immunity and the Clerk of Court should be directed to close the

file; alternatively, Defendant's Motion should be DENIED on the merits of Plaintiff's

Fourth Amendment claim and the matter should be scheduled for trial.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:        July 18th, 2019
                   Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      July 18th, 2019
            Buffalo, New York